IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| L.F. | : | |
| | : | CIVIL ACTION LAW |
| Plaintiff | : | |
| | : | NO. 4:23-CV-01038 MWB |
| v. | : | (Hon. Karoline Mehalchick) |
| | : | |
| EF EDUCATIONAL TOURS, | : | |
| EF EDUCATION FIRST | : | |
| INTERNATIONAL, LTD., EF INSTITUTE | : | Complaint Filed 6/22/2023 |
| FOR CULTURAL EXCHANGE, INC., EF | : | |
| EDUCATION FIRST INTERNATIONAL, | : | |
| LTD. (SWISS), DIEGO MANUEL | : | |
| TAYLOR, JENNIFER TAYLOR, and | : | JURY TRIAL DEMANDED |
| JOHN DOES I-V. | : | |
| | : | |
| Defendants | : | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS EF EDUCATIONAL TOURS, EF EDUCATION FIRST INTERNATIONAL, LTD. (US), EF INSTITUTE FOR CULTURAL EXCHANGE, INC., EF EDUCATION FIRST INTERNATIONAL, LTD. (SWISS), AND JENNIFER TAYLOR**

i

# TABLE OF CONTENTS

I.   PROCEDURAL HISTORY ..................................................................1

II.   FACTUAL BACKGROUND ...............................................................2

   A.  EF Offers Affordable Student Travel Through Its EF Educational Tours Programs. ................................................................................................2

   B.  Plaintiff Enrolled in an EF Educational Tour of Spain. ...............................4

   C.  Student Groups are Combined for the Tour. ................................................5

III.  STATEMENT OF ISSUES INVOLVED.............................................7

IV.   ARGUMENT.......................................................................................8

   A.  Standard of Review......................................................................................8

   B.  Massachusetts Law Governs the Scope and Effect of the Release Language in the Booking Conditions. ........................................................................9

   C.  The Release Language in the Booking Conditions Must be Enforced Pursuant to Massachusetts Law. ..............................................................13

   D.  A Release Entered Into by a Parent on Behalf of a Minor is Enforceable Under Massachusetts Law. ........................................................................16

   E.  The Release Bars Plaintiff's Claims Against the EF Defendants for Negligence (Count I), Negligent Infliction of Emotional Distress (Count II), Negligent Misrepresentation (Count III), and Breach of Contract (Count V), and against Mrs. Taylor for Negligence (Count VIII)..............................17

   F.  The EF Defendants Did Not Breach Their Agreement with Plaintiff (Count V).  18

   G.  Massachusetts Law Should Be Applied to Plaintiff's Tort Claims...............21

   H.  The EF Defendants Made no Negligent or Fraudulent Misrepresentations to Plaintiff (Counts III and IV). ..................................................................23

   I.  The Alleged Assault, if Proven, Would Constitute An Unforeseeable Criminal Act (Counts I and VIII). ..........................................................24

   J.  Both EF Educational Tours and EF Education First International, Ltd. (US) Lack Legal Existence and Therefore Lack Capacity to Be Sued. ........................29

V.  CONCLUSION ...............................................................................31

# TABLE OF AUTHORITIES

## CASES

*Aaris v. Las Virgenes Unified Sch. Dist.*, 64 Cal. App. 4th 1112, 75 Cal. Rptr. 2d 801 (1998)------------------------------------------------------------------------------- 16

*AK Steel Corp. v. Viacom, Inc.*, 835 A.2d 820, 835 A.2d 820 (2003)--------------- 30

*Allan v. Snow Summit, Inc.*, 51 Cal.App.4th 1358 (1996) ---------------------------- 12

*Armstrong v. White Winston Select Asset Funds, LLC*, 648 F. Supp. 3d 230 (D. Mass. 2022) ------------------------------------------------------------------------------- 14

*Azza v. Grp. Voyagers, Inc.*, No. CV 16-11981-GAO, 2018 WL 1513559 (D. Mass. Mar. 27, 2018)------------------------------------------------------------------------- 25

*Babich v. Karsnak*, 364 Pa.Super. 558, 528 A.2d 649, 653 (1987) ------------------ 30

*BABN Techs. Corp. v. Bruno*, No. CIV. A. 98-3409, 1998 WL 720171 (E.D. Pa. Sept. 2, 1998) --------------------------------------------------------------------------- 11

*Bookard v. Estee Lauder Companies, Inc.*, 443 F. Supp. 3d 561 (E.D. Pa. 2020)- 11

*Calhoun v. Yamaha Motor Corp., U.S.A.*, 216 F.3d 338 (3d Cir. 2000) ------------- 9

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)------------------------------- 8

*Coleman v. Chief Oil & Gas, LLC*, No. 4:21-CV-00090, 2022 WL 821167, at *1 (M.D. Pa. Mar. 17, 2022) ------------------------------------------------------------------ 8

*Cook v. Gen. Nutrition Corp.*, 749 F. App'x 126 (3d Cir. 2018) -------------------- 11

*Copithorne v. Framingham Union Hosp.*, 401 Mass. 860, 520 N.E.2d 139 (1988) ------------------------------------------------------------------------------------- 26, 27

*Corestates Bank, N.A. v. Signet Bank*, No. CIV. A. 96-3199, 1996 WL 482909 (E.D. Pa. Aug. 26, 1996)------------------------------------------------------------------- 21

*Cormier v. Central Mass. Chapter of the Natl. Safety Council*, 416 Mass. 286 (1993)------------------------------------------------------------------------------------- 14

*Deacy v. Studentcity.com, LLC*, 75 Mass. App. Ct. 1110, 916 N.E.2d 422 (2009) 25

*Doe v. Cultural Care, Inc.*, No. CIV.A. 10-11426-DJC, 2011 WL 1048624 (D. Mass. Mar. 17, 2011) ------------------------------------------------------------------ 15, 16

*Foley v. Bos. Hous. Auth.*, 407 Mass. 640, 555 N.E.2d 234 (1990) ----------------- 27

*Friedman v. Merck & Co.*, 107 Cal. App. 4th 454, 131 Cal. Rptr. 2d 885 (2003)- 23

*Gannett v. Lowell,* 16 Mass. App. Ct. 325, 450 N.E.2d 1121 (1983)---------------- 15

*Gay v. CreditInform*, 511 F.3d 369 (3d Cir. 2007)------------------------------------ 10

*Gianocostas v. Riu Hotels, S.A.*, 59 Mass. App. Ct. 753 797 N.E.2d 937 (2003)-- 12

*Gianocostas v. RIU Hotels*, S.A., No. MICV2000-02862-C, 2006 WL 1467557, (Mass. Super. May 24, 2006), *dismissed on other grounds*, *Gianocostas v. Interface Grp.-Massachusetts, Inc.*, 450 Mass. 715, 881 N.E.2d 134 (2008) ---- 23

*Glick v. Prince Italian Foods of Saugus, Inc.,* 25 Mass. App. Ct. 901, 514 N.E.2d 100 (1987) -------------------------------------------------------------------------- 28

*Gonsalves v. Commonwealth*, 27 Mass. App. Ct. 606, 541 N.E.2d 366 (1989) ---- 14

*Griffith v. United Air Lines, Inc.*, 416 Pa. 1, 203 A.2d 796 (1964) ----------------- 22

*Helfman v. Northeastern Univ.*, 485 Mass. 308, 149 N.E.3d 758 (2020) ------ 28, 29

*Hunt v. Covidien LP*, No. 22-CV-10697, 2022 WL 3566834 (D. Mass. Aug. 18, 2022) -------------------------------------------------------------------------------- 23

*Husband v. Dubose,* 26 Mass. App. Ct. 667, 531 N.E.2d 600 (1988); -------------- 27

*Jiffy Lube Int'l, Inc. v. Jiffy Lube of Pennsylvania, Inc.*, 848 F. Supp. 569 (E.D. Pa. 1994) ------------------------------------------------------------------------------- 21

*Jupin v. Kask,* 447 Mass. 141, 146, 849 N.E.2d 829 (2006) ------------------------ 25

*Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487 (1941) ------------------------- 10

*Krumbine v. Lebanon Tax Claim Bureau,* 541 Pa. 384, 663 A.2d 158 (1995) ----- 30

*Kruzits v. Okuma Mach. Tool*, 40 F.3d 52 (3d Cir. 1994) --------------------------- 10

*Lavine v. Gen. Mills, Inc.*, 519 F. Supp. 332 (N.D. Ga. 1981) ---------------------- 20

*Leavitt v. Brockton Hosp., Inc.,* 454 Mass. 37, 907 N.E.2d 213 (2009) ------------- 25

*Lee v. Allied Sports Assocs., Inc.*, 349 Mass. 544, 209 N.E.2d 329 (1965) ---- 14, 15

*Lilja v. J & B Importers, Inc.*, No. 2:20-CV-1158, 2022 WL 4094520 (W.D. Pa. Aug. 17, 2022) -------------------------------------------------------------------------- 13

*Markovitz v. Cassenti*, 90 Mass. App. Ct. 1102, 56 N.E.3d 894 (2016) ----------- 14

*McDonald v. Whitewater Challengers, Inc.*, 2015 PA Super 104, 116 A.3d 99 (2015) -------------------------------------------------------------------------- 10, 12

*Micjan v. Wal-Mart Stores, Inc.*, No. CIV.A. 14-855, 2014 WL 4348175 (W.D. Pa. Sept. 2, 2014) ----------------------------------------------------------------------- 22

*Minassian v. Ogden Suffolk Downs, Inc.,* 400 Mass. 490,  509 N.E.2d 1190 (1987) -------------------------------------------------------------------------------------- 15

*Morrison v. Wells Fargo Bank, N.A.*, 711 F. Supp. 2d 369, 376 (M.D. Pa. 2010) -- 9

*Mullins v. Pine Manor College*, 389 Mass. 47, 449 N.E.2d 331 (1983) ------------ 26

*Nationwide Mut. Ins. Co. v. Walter*, 290 Pa. Super. 129, 434 A.2d 164 (1981) --- 10

*Olsen v. Breeze, Inc.,* 48 Cal.App.4th 608 (1996) ------------------------------------ 12

*Panthera Rail Car LLC v. Kasgro Rail Corp.*, 985 F. Supp. 2d 677, 690-691 (W.D. Pa. 2013 ------------------------------------------------------------------------------- 21

*Razak v. Uber Techs., Inc.*, 951 F.3d 137, 144 (3d Cir.), *amended*, 979 F.3d 192 (3d Cir. 2020) -------------------------------------------------------------------------- 8

*Santoro v. Unique Vacations, Inc.*, No. CIV. 10-3281, 2014 WL 1614861 (D.N.J. Apr. 22, 2014) -------------------------------------------------------------------- 20

*Sharon v. Newton*, 437 Mass. 99, 769 N.E.2d 738 (2002) ------------------- 14, 15, 16

*Slotnick v. Club ABC Tours, Inc.*, 430 N.J. Super. 59, 61 A.3d 968 (Law. Div. 2012) ------------------------------------------------------------------------------ 20

*Sound Techniques, Inc. v. Hoffman*, 50 Mass. App. Ct. 425, 737 N.E.2d 920 (2000) ---------------------------------------------------------------------------------- 19

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998) -------------------------- 9

*Talley v. Supreme Ct. of Pennsylvania*, No. 3:17-CV-1632, 2019 WL 5446052 (M.D. Pa. May 23, 2019) (Mehalchick, MJ), *report and recommendation adopted sub nom. Talley v. Supreme Ct. of Pennsylvania*, No. 3:17CV1632, 2019 WL 5424399 (M.D. Pa. Oct. 23, 2019), *aff'd as modified*, No. 19-3581, 2022 WL 1701849 (3d Cir. May 27, 2022) ----------------------------------------------- 30

*Taylor v. Mooney Aircraft Corp.*, 430 F. Supp. 2d 417 (E.D. Pa. 2006) ------------ 22

*Thompson v. Peck*, 320 Pa. 27, 181 A. 597 (1935) ------------------------------- 29

*Weinberg v. Grand Circle Travel, LCC*, 891 F. Supp. 2d 228 (D. Mass. 2012) --- 25

*Williamsport Firemen Pension Boards I & II v. E.F. Hutton & Co.*, 567 F. Supp. 140, 142 (M.D. Pa. 1983) ------------------------------------------------------------- 29

*Wilson v. American Trans Air, Inc.*, 874 F.2d 386 (7th Cir.1989) ------------------- 25

*Wroblewski v. Ohiopyle Trading Post, Inc.*, No. CIV.A. 12-0780, 2013 WL 4504448 (W.D. Pa. Aug. 22, 2013) ------------------------------------------------- 16

## OTHER AUTHORITIES

Restatement (Second) Conflict of Laws § 145 ------------------------------------- 21

Restatement (Second) Conflict of Laws § 187 ------------------------------------- 11

Restatement (Second) of Torts § 311 ----------------------------------------------- 23

## RULES

Fed. R. Civ. P. 17 ------------------------------------------------------------------------ 30

Fed. R. Civ. P. 56 ------------------------------------------------------------------------- 8

Defendants EF Educational Tours, EF Education First International, Ltd. (Swiss), EF Education First International, Ltd. (US), EF Institute for Cultural Exchange, Inc., (the "EF Defendants") and Jennifer Taylor (collectively, the "Moving Defendants") respectfully submit this memorandum of law in support of their motion for summary judgment.

## I.    PROCEDURAL HISTORY

This action was commenced on June 22, 2023 by the then-minor Plaintiff's parents. Plaintiff L.F. was substituted as the party Plaintiff upon reaching the age of majority.[1] Plaintiff brought this action against: EF Education First International, Ltd., a Swiss corporation and EF Institute for Cultural Exchange, Inc., a Massachusetts corporation, which operate and market student educational tours; Jennifer Taylor, a teacher and group leader of one of the tour groups involved; and her son, Diego Taylor, a student. In addition, Plaintiff improperly named two legally non-existent entities as defendants: EF Education First, International, Ltd. and EF Educational Tours.

On August 28, 2023, all Moving Defendants filed answers. Diego Taylor, who is separately represented, filed an answer on August 30, 2023. On April 3, 2024, after several good faith attempts to confer with Plaintiff about dismissing the

---

[1] To avoid confusion, we will refer to L.F. as the Plaintiff as though L.F. had been the named Plaintiff at all times.

improperly named Defendants, the EF Defendants filed a motion to dismiss Defendants EF Education First International, Ltd. (US) and EF Educational Tours. (Doc. 25). On October 21, 2024, the Court denied the motion to dismiss without prejudice in order to allow Plaintiff to take depositions of the corporate designees to inquire about corporate existence. (Doc. 53, 54).

The parties thereafter substantially completed fact discovery[2] and the Moving Defendants now submit that the case is ripe for adjudication on the undisputed facts.

## II.   FACTUAL BACKGROUND

### A.   EF Offers Affordable Student Travel Through Its EF Educational Tours Programs.

EF Education First International, Ltd. ("EF")'s mission is to open the world through education by offering experiential learning programs focused on language, travel, cultural exchange and academics. SOF ¶ 6. One of EF's program offerings is EF Educational Tours, which are all-inclusive group tours designed primarily for middle and high school students. SOF¶ 7.  EF, a Swiss entity, operates the tours, which are marketed in the U.S. to schools and teachers by EF Institute for Cultural Exchange, Inc. ("EF Institute"). SOF¶¶ 1, 7-8. Unlike traditional travel service providers, the EF Defendants secure travel services in bulk from airlines, hotels, bus

---

[2] At the time of filing, the EF Defendants' motion for discovery sanctions against the Plaintiff (Doc. 62) is fully briefed and remains pending.

companies, and other vendors and package them for group educational tours. SOF¶ 9. The EF Defendants do not own or operate any of the travel related services that make up the tours, such as the transportation, hotels, or excursions. SOF¶ 10.

EF Educational Tours are marketed to schools and teachers, who make them available to their students in order to enhance their academic curriculum. SOF¶ 11. This model allows groups of students to experience international travel with their friends and teachers at a lower cost than would be available to them as individual travelers in the traditional travel market. SOF¶ 12.

EF strives to make its Educational Tours affordable for students. SOF¶ 13. One of the key ways it does so is by utilizing Group Leaders—typically teachers— to assist in selecting, planning, and running the tours for groups of their own students. SOF¶ 13. Group Leaders  select or customize itineraries and   host information sessions for schools. Interested students' parents can enroll their children through EF's enrollment portal. SOF¶¶ 14-15.

EF Educational Tours are offered to groups of students all over the country. SOF¶ 16. Enrollment  is optional. SOF¶ 17. To keep tours affordable, tour groups with the same itineraries are consolidated to achieve economies of scale by, for example, ensuring that tour buses used can be fully occupied. SOF¶ 18. A group may select a private tour option so that they will not be combined with another group,

3

but it typically comes at an additional cost to students. SOF¶ 19. This decision is up to the Group Leaders who plan the trip. SOF¶ 19.

While traveling, Group Leaders are responsible for student guidance and discipline. SOF¶ 20. Tour Directors, independent contractors who are in-country travel specialists, assist with local logistics and travel arrangements. SOF¶ 21.

**B.    Plaintiff Enrolled in an EF Educational Tour of Spain.**

In June 2022, L.F. was one of a group of students from a California high school who, along with their Group Leader and teacher, Evelio Arriaga (the "California Group"), enrolled in an EF Educational Tour of Spain and (the "Tour"). SOF¶¶ 24-20. Another group of students from Pennsylvania, led by teacher Jennifer Taylor (the "Pennsylvania Group") enrolled in the same Tour. SOF¶ 56. Mrs. Taylor's son, Defendant Diego Taylor, was one of the students in the Pennsylvania Group. SOF¶ 58.

Prior to departure, both Group Leaders provided the student travelers in their respective groups and their parents with information about the Tour. SOF¶¶ 34-43, 60-61. This included going over the applicable Booking Conditions which included General Terms and Conditions Rules of the Road (the "Rules"). *Id.* The Rules set forth standards of behavior expected of the students while on the Tour, including that students must abide by any curfews set by Group Leaders and were students from entering the rooms of opposite sex travelers. SOF¶¶ 35-38. The Rules warned

4

that violations could result in a student being dismissed from the Tour without a refund. SOF¶ 37. Both Mr. Arriaga and L.F.'s mother reviewed the Rules and potential consequences with L.F. and made sure she understood they were for her safety. SOF¶¶ 36-42.

As part of the process of enrolling L.F. in the Tour, L.F.'s mother electronically signed EF's Booking Conditions. SOF¶ 32. Agreement with these Booking Conditions is required for any student to be allowed to participate in the Tour and L.F. would not have been permitted to participate if she had not agreed. SOF¶ 33.

The Booking Conditions included a choice of law provision specifying that Massachusetts law would govern the agreement and the parties' performance of their obligations under it. SOF¶ 54. In addition, the Booking Conditions provided that the traveler agreed "to release EF and my school, my school district, my school board, my Group Leader, and Tour Director (collectively, the 'Released Parties') from, and [not] to sue the Released Parties for, any and all claims of any nature related in any manner to my participation in an EF-sponsored tour." SOF¶ 48-52.

### C.    Student Groups are Combined for the Tour.

Both groups arrived in Madrid, Spain, on June 24, 2022. SOF¶ 72. The California Group and Pennsylvania Group were combined for the Tour, meaning that they shared a tour bus, were booked at the same hotels, and were scheduled for

5

some of the same activities, such as museums and meals. SOF¶ 74. Both groups were booked to stay at a Holiday Inn Express in Madrid for the beginning of the trip. SOF¶ 80. When checking into the hotel, each Group Leader was responsible for assigning rooms to their own students. SOF¶ 83. L.F. was assigned a room with female students from the California Group and Diego was assigned a room with a male student from the Pennsylvania Group. SOF¶¶ 84-85. 87.  It was not possible to assign all students of different genders to different floors of the hotel. The rooms given by the hotel did not allow for that. SOF¶ 87. Mrs. Taylor set a curfew each night and she and her husband would verify that each student in their group was in their own room at curfew. SOF ¶ 88.

Over the first two days of the Tour, L.F. and Diego had been messaging and flirting with each other. SOF¶¶ 76, 79, 89-92, 96. If L.F. felt uncomfortable with Diego's attention, she did not inform any of the adults on the trip. SOF¶ 97-99. Mrs. Taylor did not observe any inappropriate or concerning interactions between the two and no one reported any such incidents to her. SOF ¶¶ 99-100.

On their third night in Spain after the room check, L.F. surreptitiously left her room close to midnight to meet Diego in the hallway of the hotel. SOF¶¶ 101-107. The two waited to meet until after room checks were complete for fear of getting in trouble. SOF¶ 108. Once inside Diego's room, the two engaged in sexual intercourse over approximately three to four hours. SOF¶¶ 112-125. L.F. returned to her room

6

around 4:00 a.m. SOF ¶ 126.While L.F. was in his room, Diego's roommate was apparently asleep a few feet away. SOF ¶ 117. There was no report of any disturbance. SOF ¶ 132.

Later the next day, L.F. told her friends and Mr. Arriaga what had allegedly transpired between her and Diego. SOF¶ 130. Diego maintains their interactions were consensual. SOF¶ 135. L.F. reported her allegations to her Group Leader, Mr. Arriaga, and later to the local police. SOF ¶ 130. Diego was arrested, but released without charges. SOF¶¶ 134-136. L.F.'s father traveled to Spain and accompanied L.F. home, cutting short her Tour. SOF¶ 141. Diego was dismissed from the Tour for breaking the Student Behavior Contract and he returned to Pennsylvania. SOF¶¶ 136-137.

## III.    STATEMENT OF ISSUES INVOLVED

1.    Whether the Court should enforce the Parties' contractual choice of law provision.

2.    Whether the Court should enforce the Release set forth in the Booking Conditions.

3.    Whether the EF Defendants are entitled to summary judgment on Plaintiff's claim for breach of contract.

7

4.     Whether the Court should apply Massachusetts law to the Plaintiff's tort claims.

5.     Whether the EF Defendants are entitled to summary judgment on Plaintiff's claims for negligent or intentional misrepresentation.

6.     Whether the Moving Defendants are entitled to summary judgment on Plaintiff's negligence claims.

7.     Whether the Court should dismiss claims against EF Educational Tours and EF Education First International, Ltd. (US) because they lack legal existence.

## IV.    ARGUMENT

### A.    Standard of Review.

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." *Coleman v. Chief Oil & Gas, LLC*, No. 4:21-CV-00090, 2022 WL 821167, at *1 (M.D. Pa. Mar. 17, 2022) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In attempting to defeat summary judgment, '[s]peculation and conclusory allegations do not satisfy [the nonmoving party's] duty.'" *Razak v. Uber Techs., Inc.*, 951 F.3d 137, 144 (3d Cir.), *amended*, 979 F.3d 192 (3d Cir. 2020) (citations omitted). "With respect to an issue on which the nonmoving party bears

8

the burden of proof, the moving party may discharge that burden by "'showing'—

that is, pointing out to the district court—that there is an absence of evidence to

support the nonmoving party's case." *Morrison v. Wells Fargo Bank, N.A.*, 711 F.

Supp. 2d 369, 376 (M.D. Pa. 2010) (citations omitted).

> **B.      Massachusetts Law Governs the Scope and Effect of the Release Language in the Booking Conditions.**

The Booking Conditions applicable to the Tour contained a Massachusetts

choice of law provision. This is exactly the type of case that highlights the

importance of a contractual choice of law clause because Plaintiff is a resident of

California, Defendants Diego and Jennifer Taylor are residents of Pennsylvania,

Defendant EF is a Swiss entity, EF Institute is located in Massachusetts, and Plaintiff

was allegedly injured in Spain. Absent a choice of law provision in the contract, all

parties involved would be left to guess at what jurisdiction's laws would govern the

interpretation of the parties' agreement and their respective duties and obligations

towards one another. As discussed below, this express choice of law must be given

effect.

"The appropriate choice-of-law rules to be applied is controlled by the basis

for [a court's] federal jurisdiction, or power to adjudicate the [plaintiff's] claims."

*Calhoun v. Yamaha Motor Corp., U.S.A.*, 216 F.3d 338, 343 (3d Cir. 2000) (citing

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998)). "It is axiomatic that a

federal court sitting in diversity must apply the choice-of-law rules of the state in which it sits." *Id.* (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496–97 (1941)). As this case is before the Court sitting in diversity,[3] the choice of law rules of Pennsylvania must be applied.

"In a contract action involving an underlying tort. . . the court will apply a contract law—and not a tort law—choice of law framework." *McDonald v. Whitewater Challengers, Inc.*, 2015 PA Super 104, 116 A.3d 99 (2015) (citing *Nationwide Mut. Ins. Co. v. Walter*, 290 Pa. Super. 129, 434 A.2d 164 (1981) and holding that where a New York resident signed a release as a condition of participating in a whitewater rafting trip in Pennsylvania, contract law choice of law rules should be used to determine which law governed interpretation of the release).

Under Pennsylvania law, if the parties' agreement contains a choice of law provision, as it does here, "Pennsylvania courts generally honor the intent of the contracting parties" unless either:

> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue.

*Gay v. CreditInform*, 511 F.3d 369 (3d Cir. 2007)  (citing *Kruzits v. Okuma Mach. Tool*, 40 F.3d 52, 56 (3d Cir. 1994)  and Restatement (Second) Conflict of Laws §

---

[3] Complaint ¶ 2.

187). "The party challenging the application of the law chosen by . . . contract bears the burden of showing that such application would be contrary to public policy." *BABN Techs. Corp. v. Bruno*, No. CIV. A. 98-3409, 1998 WL 720171, at *11 (E.D. Pa. Sept. 2, 1998).

In this case, the Booking Conditions specify that the parties' "agreement and performance hereunder" are to be governed by the laws of the Commonwealth of Massachusetts. SOF¶ 54. Plaintiff has alleged and it is undisputed that EF Institute's principal place of business is in Massachusetts. SOF¶ 3. This is sufficient to establish a substantial relationship to Massachusetts and a reasonable basis for parties' choice of law. *See, e.g.*, *Bookard v. Estee Lauder Companies, Inc.*, 443 F. Supp. 3d 561, 570 (E.D. Pa. 2020) ("The fact that ELC, one of the signatories to the SSA, is headquartered in New York is a sufficient basis for the parties' selection of New York law"); *see also Cook v. Gen. Nutrition Corp.*, 749 F. App'x 126, 130 (3d Cir. 2018) (holding that principal place of business qualifies as "substantial relationship" to a state).

Further, application of Massachusetts law would not violate any fundamental policy of a state with a materially greater interest in this controversy. First, no state has a materially greater interest than Massachusetts. EF Institute's principal place of business is in Massachusetts. From there, EF Institute contracts with student travelers from various states. Massachusetts has a strong interest in regulating a

11

business within its borders, and in ensuring uniformity of treatment for those contracting with Massachusetts businesses. *See, e.g.*, *Gianocostas v. Riu Hotels, S.A.*, 59 Mass. App. Ct. 753, 761, 797 N.E.2d 937 (2003) (recognizing Massachusetts' interest in regulating travel industry within its borders). Where the EF Defendants contract with students from all over the country, those students should not each be permitted to "bring their law with them" because of the "financial/liability uncertainty" that would result. *McDonald*, 116 A.3d at 103.

Assuming Plaintiff were to argue that either California (her home state) or Pennsylvania (the home state of two Defendants) had a materially greater interest in this controversy, Plaintiff cannot sustain her burden of showing that either has a fundamental policy that would be violated by applying Massachusetts law. Both California and Pennsylvania generally recognize the enforceability of releases in consumer contracts for non-essential activities. *See, e.g.*, *McDonald*, 116 A.3d at 103 (recognizing that exculpatory releases for recreational activities are valid under Pennsylvania law); *Allan v. Snow Summit, Inc.*, 51 Cal.App.4th 1358, 1376–1377 (1996) (holding ski resort's release enforceable); *Olsen v. Breeze, Inc.,* 48 Cal.App.4th 608 (1996) (holding that ski shop could require customer to sign release as condition of adjusting bindings). Courts in this District have recognized that enforcing a contractual limitation of liability pursuant to another state's law does not impact any strong public policy interest of Pennsylvania. *See, e.g. Lilja v. J & B*

12

*Importers, Inc.*, No. 2:20-CV-1158, 2022 WL 4094520 *4 (W.D. Pa. Aug. 17, 2022)

(enforcing contractual choice of law clause to apply Washington law and, applying

Washington law, enforcing release of liability of bicycle mechanic).

### C.    The Release Language in the Booking Conditions Must be Enforced Pursuant to Massachusetts Law.

By enrolling L.F. in the Tour, her mother, Morgan Ash ("Ash") agreed to EF's

Booking Conditions. The Booking Conditions included a provision entitled "Release

and Agreement," which states, in pertinent sections:

Release and Agreement

I (or parent or legal guardian if enrollee is under 18 or a minor under any other applicable law) have read, understand and agree to the following in exchange for enrollment on an EF Educational Tour:

3. Without limitation, EF is not responsible for any injury, loss or damage to person or property, death, delay, or inconvenience in connection with the provision of any goods or services. . . .

\*      \*      \*

4. I agree to release EF and my school, my school district, my school board, my Group Leader, and Tour Director (collectively, the "Released Parties") from, and agree not to sue the Released Parties for, any and all claims of any nature related in any manner to my participation in an EF-sponsored tour or a Service Learning Tour, including, but not limited to, claims for negligence, breach of contract, breach of express or implied warranties, negligence or wrongful death, or any statutorily based claim. I hereby unconditionally and unequivocally waive any and all claims and demands for all damages, losses, costs and expenses of any nature whatsoever (including attorneys' fees) on account of or arising out of any and all personal injury, death, bodily injury, mental anguish, emotional distress, or property or other damage that I may suffer from any cause whatsoever

13

related in any way to my participation in any EF-sponsored tour or a Service Learning Tour.

5. I understand that travel in other nations is not similar to travel within the United States. . . . I assume all risk of bodily injury, death, emotional trauma, property damage, inconvenience, and/or loss resulting from negligence or any other acts of any and all persons or entities, however caused, including, but not limited to, those risks mentioned above. It is my intention fully to assume all of the risks of travel and participation in the program and to release the Released Parties from any and all liabilities to the maximum extent permitted by law.

\*     \*     \*

7. I agree that this Release applies to and binds myself and my minor child enrolling on tour (if applicable) along with my personal representatives, executors, heirs, and family.

SOF¶¶ 38-54.

"Massachusetts law is pellucid that a broad release can encompass all matters that come within its terms." *Armstrong v. White Winston Select Asset Funds, LLC*, 648 F. Supp. 3d 230, 250–51 (D. Mass. 2022). Massachusetts law strongly favors the enforceability of releases. *Lee v. Allied Sports Assocs., Inc.*, 349 Mass. 544, 209 N.E.2d 329 (1965); *Markovitz v. Cassenti*, 90 Mass. App. Ct. 1102, 56 N.E.3d 894 (2016) (citing *Cormier v. Central Mass. Chapter of the Natl. Safety Council*, 416 Mass. 286, 288–289 (1993); *Sharon v. Newton*, 437 Mass. 99, 105–107, 769 N.E.2d 738 (2002); *Gonsalves v. Commonwealth*, 27 Mass. App. Ct. 606, 606, 541 N.E.2d 366 (1989)). A party may, by agreement, allocate risk and, by contract, exempt itself from liability that it might subsequently incur as a result of its own negligence. *Lee*, 349 Mass. at 550.

14

When a defendant raises a release as a bar to a plaintiff's claim, "the plaintiff bears the burden of proving that it is not a valid bar to her suit." *Sharon*, 437 Mass. at n.6  (citing *Gannett v. Lowell,* 16 Mass. App. Ct. 325, 327, 450 N.E.2d 1121 (1983)). Plaintiff cannot sustain her burden on this point. It is undisputed that the EF Defendants would not have permitted L.F. to enroll in the Tour had her parents not agreed to the Terms. SOF¶ 33. *See Lee*, 349 Mass. at 550 (holding release enforceable where agreement to its terms was a condition precedent to gaining admission). As a provider of services, the EF Defendants are within their rights to dictate the terms pursuant to which they are willing to provide them. *See Minassian v. Ogden Suffolk Downs, Inc.,* 400 Mass. 490, 492, 509 N.E.2d 1190 (1987) ("take it or leave it" release as condition of voluntary participation enforceable).

Moreover, "[i]t is a rule in this Commonwealth that the failure to read or to understand the contents of a release, in the absence of fraud or duress, does not avoid its effects." *Doe v. Cultural Care, Inc.*, No. CIV.A. 10-11426-DJC, 2011 WL 1048624, at *5 (D. Mass. Mar. 17, 2011) (citing *Sharon,* 437 Mass. at 103; *Lee*, 349 Mass. at 550–51). For example, in *Sharon v. City of Newton*, the minor plaintiff and her father were "deemed to have understood" the release the father signed, despite their contention that neither realized that by signing it, they were waiving future

claims against the defendant. *Sharon*, 437 Mass. at 103. This principle continues to be applied in similar cases.[4] *See, e.g., Doe*, 2011 WL 1048624.

It is undisputed that L.F.'s mother signed the Booking Conditions. Where Ms. Ash could identify no false statements made to her to induce her to sign the agreement, it is also undisputed that her signature was not induced by fraud. SOF¶ 142. Plaintiffs can show no facts to overcome the enforceability of the release.

### D.    A Release Entered Into by a Parent on Behalf of a Minor is Enforceable Under Massachusetts Law.

Under Massachusetts law, a release of liability signed by a parent on behalf of a minor is fully enforceable and cannot be disaffirmed when the minor reaches majority.[5] *Sharon*, 437 Mass. at 109 (where father of minor child signed a release in his capacity as parent "because he wanted his child to benefit" from participating in a voluntary, nonessential activity, release was binding and could not be disaffirmed by minor upon reaching majority). Just as in the *Sharon* case, here, the release at issue was clearly labeled a such and was signed by Ms. Ash "for the purpose of ensuring that L.F. would be permitted" to enroll in the tour. *Id.*at 104. A release

---

[4] The same principle is followed under Pennsylvania law. *See, e.g.*, *Wroblewski v. Ohiopyle Trading Post, Inc.*, No. CIV.A. 12-0780, 2013 WL 4504448 (W.D. Pa. Aug. 22, 2013) (holding release signed by whitewater rafting participant was valid and enforceable even if she did not read it).

[5] To the extent Plaintiff may assert that the law of her home state, California should be applied, there is no conflict of law because under California law, it is well settled that a parent may execute a release on behalf of his or her child. *Aaris v. Las Virgenes Unified Sch. Dist.*, 64 Cal. App. 4th 1112, 1120, 75 Cal. Rptr. 2d 801, 805 (1998).

signed in order to participate in a purely voluntary activity, an activity that was neither compulsory nor essential, is unequivocally valid under Massachusetts law. *Id.* Had L.F. and her parents been unwilling to agree to the allocation of risk set forth in the terms offered as a condition of enrolling in the Tour, they could have simply chosen not to enroll. Without these types of risk allocation provisions, it is conceivable that student educational travel of this type would become so prohibitively expensive that it would become inaccessible to most students.

> **E.    The Release Bars Plaintiff's Claims Against the EF Defendants for Negligence (Count I), Negligent Infliction of Emotional Distress (Count II), Negligent Misrepresentation (Count III), and Breach of Contract (Count V), and against Mrs. Taylor for Negligence (Count VIII).**

Plaintiff contractually agreed to release the Moving Defendants from all claims of negligence, breach of contract, and breach of express or implied warranties, and to unconditionally and unequivocally waive any and all claims for damages, losses, costs and expenses of any nature whatsoever.

Furthermore, Plaintiff agreed to "release EF and my school, my school district, my school board, my Group Leader, and Tour Director (collectively, the 'Released Parties') from, and [not] to sue the Released Parties for, any and all claims of any nature related in any manner to my participation in an EF-sponsored tour." SOF¶ 50. This release bars each of Plaintiff's claims against the EF Defendants for Negligence (Count I), Negligent Infliction of Emotional Distress (Count II),

17

Negligent Misrepresentation (Count III), and Breach of Contract (Count V), and against Mrs. Taylor for Negligence (Count VIII). Accordingly, the Defendants are entitled to summary judgment on all of those claims.

**F.    The EF Defendants Did Not Breach Their Agreement with Plaintiff (Count V).**

Even if the Release did not bar Plaintiff's breach of contract claim against EF Defendants, this claim fails on the merits. Plaintiff has alleged that the EF Defendants breached their agreement with L.F. by failing to provide a safe, secure, and supervised international trip for L.F. Complaint at ¶¶ 78-79. However, Plaintiff cannot point to any specific contractual terms that the EF Defendants breached with respect to the Tour. Nowhere in the Booking Conditions do the EF Defendants promise that L.F. would not suffer any injury or harm on the Tour. To the contrary, the Booking Conditions provide that the participant agreed to

> assume all risk of bodily injury, death, emotional trauma, property damage, inconvenience, and/or loss resulting from negligence or any other acts of any and all persons or entities, however caused, including, but not limited to, those risks mentioned above. It is my intention fully to assume all of the risks of travel and participation in the program and to release the Released Parties from any and all liabilities to the maximum extent permitted by law.

SOF¶ 38.

Furthermore, the Booking Conditions include a merger and integration clause which provides, in part:

18

> This Release and Agreement and EF's Booking Conditions constitute the entire agreement between EF and me with reference to the subject matter herein, and I do not rely upon any promises, inducements, marketing materials, or agreements not herein, including, but not limited to, any oral statements made to me by any agents or employees of EF or by my school or Group Leader.

SOF¶ 53. Any alleged representations or promises that the Plaintiff claims were made outside of the Booking Conditions are therefore of no legal effect. *Sound Techniques, Inc. v. Hoffman*, 50 Mass. App. Ct. 425, 429-430, 737 N.E.2d 920 (2000) (where merger and integration clause is unambiguous, it is enforceable absent evidence of fraud).

The EF Defendants fully performed their agreement under the terms set forth in the Booking Conditions. They provided transportation to Spain with hotel accommodation at a well-known hotel brand in Madrid. SOF¶¶ 75, 80. There is no evidence that the hotel was unsafe or that there was no supervision. Supervision was provided by the Group Leaders and other adults on the trip. The undisputed evidence shows that the Group Leaders assigned students to hotel rooms with same-sex roommates and set curfews. SOF¶¶ 83-88. It is undisputed that L.F. was informed that there would be curfews and of the prohibition on entering rooms of members the opposite sex. SOF¶¶ 38-40. L.F.'s mother expected her to abide by the Rules. SOF¶¶ 42-43. It is undisputed that Mrs. Taylor as Group Leader for the Pennsylvania Group, imposed rules, set curfews, conducted room checks, and enforced these rules. SOF¶¶ 56-70, 94, 101, 103.

19

General representations the EF Defendants prioritized safety or that the trip would be safe do not constitute a guarantee that the Plaintiff would come to no harm. *See, e.g. Santoro v. Unique Vacations, Inc.*, No. CIV. 10-3281, 2014 WL 1614861 (D.N.J. Apr. 22, 2014) (granting summary judgment on traveler's breach of warranty claim against  marketing and management companies because such a claim cannot be brought "against tour operators premised on allegations that the tour operators 'guarantee[d] a trip free of harm'"); *see also Slotnick v. Club ABC Tours, Inc.*, 430 N.J. Super. 59, 61 A.3d 968 (Law. Div. 2012) (holding that general promise of "safe and reliable" trip did not create actionable guarantee); *Lavine v. Gen. Mills, Inc.*, 519 F. Supp. 332 (N.D. Ga. 1981) ("a general promise that the trip would be 'safe and reliable' does not constitute a guarantee that no harm would befall plaintiff"). Such generalized statements are not actionable.

The Booking Conditions contained no specific promises regarding student safety or specific steps that would be taken to prevent students from breaking the rules to which they agreed. The Booking Conditions specified that students who broke the rules risked being dismissed from the Tour. It is undisputed that L.F. broke these rules by leaving her room after the curfew. If L.F. had not broken the Rules, the alleged incident would not have occurred.

20

### G.   Massachusetts Law Should Be Applied to Plaintiff's Tort Claims.

Although the Moving Defendants submit that Plaintiff's tort claims other than intentional misrepresentation are barred by the terms of the release, to the extent the Court reaches the merits of these claims, Massachusetts law should be applied. Contractual choice of law provisions will govern causes of action based in tort where "the fair import of the provision embraces all aspects of the legal relationship." *Jiffy Lube Int'l, Inc. v. Jiffy Lube of Pennsylvania, Inc.*, 848 F. Supp. 569, 576 (E.D. Pa. 1994). Here, as noted above, the contractual choice of law provision is broad and applies to the parties' "agreement and performance hereunder." SOF¶ 54. The clause is not narrowly limited to the interpretation of the parties' agreement, and accordingly applies to Plaintiff's tort claims. *Compare Panthera Rail Car LLC v. Kasgro Rail Corp.*, 985 F. Supp. 2d 677 (W.D. Pa. 2013) (provision stating "[t]his Lease shall be governed by" Minnesota law was narrow and did not extent to tort claims) *with Corestates Bank, N.A. v. Signet Bank*, No. CIV. A. 96-3199, 1996 WL 482909, n.3 (E.D. Pa. Aug. 26, 1996) (language of contract was sufficiently broad to encompass tort claims).

Moreover, even if the contractual choice of law did not govern the tort causes of action, choice of law principles favor application of Massachusetts laws. In considering the appropriate law to apply, Pennsylvania courts assess the factors set forth at § 145 of the Restatement (Second) Conflict of Laws:

21

(a) the place where the injury occurred,
(b) the place where the conduct causing the injury occurred,
(c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and
(d) the place where the relationship, if any, between the parties is centered.

*Micjan v. Wal-Mart Stores, Inc.*, No. CIV.A. 14-855, 2014 WL 4348175 *4 (W.D. Pa. Sept. 2, 2014) (citing *Griffith v. United Air Lines, Inc.*, 416 Pa. 1, 203 A.2d 796 (1964)).

Here, the alleged injury occurred in Spain. L.F. is a resident of California, Mrs. Taylor and Diego Taylor are residents of Pennsylvania. SOF¶¶ 28-29, 56; Complaint ¶¶7, 13-15. The tour operator, EF Education First is a Swiss entity. SOF¶ 1. Some of the injury causing conduct allegedly occurred in Spain, while other allegedly injurious conduct occurred in Massachusetts and California.

EF Institute is located in Massachusetts and contracted with L.F. and her parents and with Diego and his parents from Massachusetts. To the extent the parties' relationship is centered anywhere, it is Massachusetts. SOF¶ 3. Accordingly, Massachusetts has the most significant contacts with the events at issue in this case. *See, e.g.*, *Taylor v. Mooney Aircraft Corp.*, 430 F. Supp. 2d 417, 430 (E.D. Pa. 2006) (where home state of defendant had "greater relationship to the injury producing conduct" than Pennsylvania, the law of that state should be applied).

22

**H.    The EF Defendants Made no Negligent or Fraudulent Misrepresentations to Plaintiff (Counts III and IV).**

Plaintiff alleges that the EF Defendants made negligent representations to L.F.'s parents with regard to safety and security measures and supervision that would be in effect on the Tour, and that as a result of their reliance on these alleged misrepresentations, L.F. was harmed. However, this cause of action is not recognized under Massachusetts law. Massachusetts has expressly declined to adopt § 311 of the Restatement (Second) of Torts with respect to claims for negligent misrepresentation causing physical injury. *Gianocostas v. RIU Hotels*, S.A., No. MICV2000-02862-C, 2006 WL 1467557, at *7 (Mass. Super. May 24, 2006), *dismissed on other grounds*, *Gianocostas v. Interface Grp.-Massachusetts, Inc.*, 450 Mass. 715, 881 N.E.2d 134 (2008) (confirming that negligent misrepresentation that results in physical injury is not a recognized cause of action under Massachusetts law); *Hunt v. Covidien LP*, No. 22-CV-10697, 2022 WL 3566834, n.3 (D. Mass. Aug. 18, 2022).

Even if this cause of action were recognized, however, as would be the case if California law were applied, *see Friedman v. Merck & Co.*, 107 Cal. App. 4th 454, 131 Cal. Rptr. 2d 885 (2003), Plaintiff can point to no negligently made statement of fact by the EF Defendants that resulted in L.F.'s alleged injuries. While her parents may assert they would not have let her go on the Tour had they known that

male and female students would be assigned hotel rooms on the same floor, L.F.'s mother admittedly relied upon anecdotes from acquaintances that students were separated by gender. SOF¶ 45. Moreover, Plaintiffs cannot show that the alleged assault would not have taken place if the two students involved had been assigned to rooms on different floors.

With respect to Plaintiff's claim for fraudulent or intentional misrepresentation, there is simply no evidence that the EF Defendants made any intentional misrepresentations. Plaintiff had no specific recollection of what representations were made to her. SOF ¶ 41. Plaintiff's father had no recollection of any information provided during the one informational meeting he had attended via Zoom, and Plaintiff's mother testified that she had a general belief that there would be more security than there was, but could not identify any specific misrepresentation that an EF Defendant allegedly made. Indeed, when asked directly, Ms. Ash could not point to any statements made by EF or its representatives in advance of enrolling L.F. in the Tour that were untrue. SOF¶ 142.

## I.     The Alleged Assault, if Proven, Would Constitute An Unforeseeable Criminal Act (Counts I and VIII).

Plaintiff asserts two separate counts of Negligence, one against the EF Defendants, and the other against Mrs. Taylor individually. As to the EF Defendants, Plaintiff claims that they failed to exercise reasonable care in ensuring the safety of

24

their travelers, assigning hotel rooms, and supervising the student travelers. Complaint ¶ 53. As to Mrs. Taylor, Plaintiff alleges that she failed to exercise reasonable care to insure a safe trip, failed to disclose "known attributes and behaviors of" Diego Taylor, and failed to "intervene" to keep Diego away from L.F. Complaint ¶ 93.

Under Massachusetts law, "[t]o prevail on a negligence claim, a plaintiff must prove that the defendant owed the plaintiff a duty of reasonable care, that the defendant breached this duty, that damage resulted, and that there was a causal relation between the breach of the duty and the damage." *Jupin v. Kask,* 447 Mass. 141, 146, 849 N.E.2d 829 (2006). "Whether a duty of care exists is a question of law." See *Leavitt v. Brockton Hosp., Inc.,* 454 Mass. 37, 39, 907 N.E.2d 213 (2009).

It is well settled under Massachusetts law that "tour operators owe no 'heightened duty of care' similar to that of an innkeeper." *Deacy v. Studentcity.com, LLC*, 75 Mass. App. Ct. 1110, 916 N.E.2d 422 (2009) (unpublished) (citing *Wilson v. American Trans Air, Inc.,* 874 F.2d 386, 388–391 (7th Cir.1989)). Moreover, in general, travel agents and tour operators cannot be held liable for the wrongful acts of third parties on premises they do not own or control. *Azza v. Grp. Voyagers, Inc.*, No. CV 16-11981-GAO, 2018 WL 1513559, at *2 (D. Mass. Mar. 27, 2018) (citing *Weinberg v. Grand Circle Travel, LCC*, 891 F. Supp. 2d 228, 248 (D. Mass. 2012)).

It is undisputed that the EF Defendants did not own, operate, or control the hotel where the alleged incident occurred. SOF¶ 10.

Moreover, the intervening criminal act of a third party is a superseding cause which breaks the chain of proximate causation in situations where the criminal act is not reasonably foreseeable. *See, e.g., Copithorne v. Framingham Union Hosp.*, 401 Mass. 860, 862, 520 N.E.2d 139 (1988) (citing *Mullins v. Pine Manor College*, 389 Mass. 47, 62–63, 449 N.E.2d 331 (1983)).

Neither the EF Defendants nor Mrs. Taylor owed a duty to L.F. to protect her from an allegedly criminal assault which was not reasonably foreseeable. Plaintiff alleges that a fellow student participant on the Tour sexually assaulted her in his room. This is not analogous to a case where a property owner fails to provide reasonable security measures despite known instances of criminal activity. Here, there is no evidence that the Moving Defendants should have been on notice that L.F. was likely to disregard the Rules imposed for her own safety and that another student would allegedly assault her when she did. SOF¶¶ 139-140.

There is no evidence that Diego was an aggressive or threatening individual. SOF ¶ 139-140. There was no history of complaints of sexual misconduct against him by Plaintiff or others. *Id.* It is undisputed that L.F. did not advise her Group Leader or any Defendant that Diego was making her feel uncomfortable. SOF¶¶ 99-100.

26

These facts make the case distinguishable from others in which a defendant has been held liable for failing to warn of a dangerous person or prevent a criminal act. For example, in *Copithorne*, a female hospital employee was raped by her doctor at her home. While visiting her apartment on a house call, the doctor allegedly drugged and raped her. *Id.* at 861-862. Massachusetts' highest court held that the hospital had a duty of care to protect the plaintiff from the doctor—but only because numerous complaints of sexual assault had been made against him in the past. No such facts exist here.

Indeed, the case more resembles *Foley v. Bos. Hous. Auth.*, 407 Mass. 640, 555 N.E.2d 234 (1990). In that case, an employee of the Boston Housing Authority ("BHA") was assaulted by a fellow employee. The evidence showed that because of his position with the BHA, the plaintiff was frequently threatened and attacked by tenants, many of whom he was in the process of evicting. The BHA had provided the plaintiff with security to protect against the foreseeable threats of angry tenants. However, the court held that the attack by a fellow employee (not an angry tenant), with whom the plaintiff had had no prior problems, was unforeseeable. Where the "risk which results in the plaintiff's injury is not one which could be reasonably anticipated by the defendant," there is no duty to guard against it. *Id.* (quoting *Husband v. Dubose,* 26 Mass. App. Ct. 667, 669, 531 N.E.2d 600 (1988); *Glick v.*

27

*Prince Italian Foods of Saugus, Inc.,* 25 Mass. App. Ct. 901, 902, 514 N.E.2d 100 (1987)).

The case perhaps most on point is that of *Helfman v. Northeastern Univ.*, 485 Mass. 308 (2020). In that case, a student sued her college for failing to protect her from an allegedly non-consensual sexual encounter when she and the accused assailant were intoxicated following an underage, on campus drinking party.  As the court noted, the evidence showed that both the plaintiff and assailant were residents of the same dorm building and had returned there together, both intoxicated. There was no evidence the assailant was acting aggressively or sexually towards the plaintiff or that she was dangerously drunk. *Id.* at 322. Accordingly, the court reasoned that "[t]he mere presence of an intoxicated young woman in the company of an intoxicated young man as they returned to their shared residence hall does not, without more, suggest that a crime or physical harm is imminent." *Id.* at 323.

In the instant case there is no indication that alcohol was involved in the encounter between Plaintiff and Diego. There is no evidence that the Moving Defendants knew L.F. was breaking the curfew and leaving her room after hours such that they had a duty to protect her from herself. There is no evidence of any history of complaints against Diego. *See id.* at 322 ("nothing in the record indicate[d] the alleged attacker had a history of sexual assaults"). There is no evidence that Mrs. Taylor, specifically, was aware of some facts that made the alleged assault

28

foreseeable to her. There is no evidence that any facts or circumstances were brought to the attention to any of the Defendants that would have given rise to a duty to take some additional action.

In this case, Plaintiff is expected to argue that it is always foreseeable that teenagers may try to break rules and engage in prohibited behavior, and must be protected from themselves. However, such a generalized assumption is insufficient to give rise to a duty to act as students' jailors any time they are being housed on the same floor. *Helfman*, 485 Mass. at 324 (declining to impose a duty to protect students from sexual assault "because of the generally recognized connection between alcohol and sexual assault on college campuses").

### J.    Both EF Educational Tours and EF Education First International, Ltd. (US) Lack Legal Existence and Therefore Lack Capacity to Be Sued.

In order to participate in a lawsuit, a party must have a legal existence recognized at law. *Williamsport Firemen Pension Boards I & II v. E.F. Hutton & Co.*, 567 F. Supp. 140, 142 (M.D. Pa. 1983) (citations omitted). In the absence legal existence, any adjudication is a nullity. *Thompson v. Peck*, 320 Pa. 27, 30, 181 A. 597, 598 (1935).

Along with the lack of legal existence comes a lack of capacity to be sued. Under the Federal Rules of Civil Procedure, capacity is determined for parties other than individuals or corporations, "by the law of the state where the court is located,"

29

subject to exceptions that do not apply here. Fed. R. Civ. P. 17(b). As EF Educational Tours and EF Education First International, Ltd. (US) are neither individuals nor corporations, the law of Pennsylvania applies to determine capacity.

Pennsylvania law requires that a party have a recognized legal existence for it to have capacity to be sued. Nonentities, such as an unincorporated subdivision of a corporation, lack capacity, and therefore must be dismissed. *Babich v. Karsnak*, 364 Pa.Super. 558, 528 A.2d 649, 653 (1987) (granting summary judgment for an unincorporated subdivision of another entity on grounds that it was not capable of being sued); *followed by AK Steel Corp. v. Viacom, Inc.*, 835 A.2d 820, 835 A.2d 820, 824 (2003); *see also Talley v. Supreme Ct. of Pennsylvania*, No. 3:17-CV-1632, 2019 WL 5446052, at *10 (M.D. Pa. May 23, 2019); *Krumbine v. Lebanon Tax Claim Bureau,* 541 Pa. 384, 663 A.2d 158 (1995).

EF Educational Tours is the name of a product marketed by EF Institute for Cultural Exchange, Inc. SOF¶¶ 4-5. It is not a separate company or even a subdivision of one of the EF Defendants. Accordingly, it does not have a separate legal existence and lacks capacity to be sued.

EF Education First International, Ltd. (US) is simply non-existent.  SOF¶ 2. A Swiss entity by that name does exist. SOF¶ 1. Plaintiff has named that entity, it has accepted service, appeared, and is actively defending the case. There is no other separate legal entity called EF Education First International Ltd. organized in the

30

Commonwealth of Massachusetts or with a principal place of business in Massachusetts as alleged in the Plaintiff's Complaint. SOF¶2.

Plaintiff can come forward with no evidence to show that these two Defendants have any separate legal existence and so the EF Defendants are entitled to summary judgment dismissing EF Educational Tours and EF Education First International, Ltd. (US).

## V.    CONCLUSION

Wherefor, Defendants EF Educational Tours, EF Education First International, Ltd. (Swiss), EF Education First International, Ltd. (US), EF Institute for Cultural Exchange, Inc., and Jennifer Taylor respectfully request that the Court enter summary judgment in their favor on all counts and grant such other and further relief as is just and equitable.

# <u>CERTIFICATION OF WORD COUNT</u>

In accordance with Local Rule 7.8(b)(2), and the Court's Order dated June 2, 2025, permitting the parties to file briefs in support and/or opposition of motions for summary judgment not to exceed 7,500 words or thirty pages, I, Kara Thorvaldsen, certify that the foregoing brief, excluding the caption, signature block, table of contents, and table of authorities, is 7,498 words.


Dated: July 14, 2025

LAWSON & WEITZEN, LLP

By:   /s/ Jeffrey P. Allen
Jeffrey P. Allen (Admitted *Pro Hac Vice)*
MA BBO 015500
Kara Thorvaldsen (Admitted *Pro Hac Vice)*
MA BBO 660723
Attorney for Defendants
EF Educational Tours, EF Education First International, Ltd., EF Institute for Cultural Exchange, Inc., EF Education First International, Ltd. (Swiss), and Jennifer Taylor

88 Black Falcon Avenue
Suite 345
Boston, MA 02210
Tel: (617) 439-4990
Fax: (617) 439-3987
jallen@lawson-weitzen.com
kthorvaldsen@lawson-weitzen.com

McCORMICK LAW FIRM

By:   /s/ Brian J. Bluth
        Brian J. Bluth
        PA 87432
        Attorney for Defendants
        EF Educational Tours, EF
        Education First International,
        Ltd., EF Institute for Cultural
        Exchange, Inc., EF Education
        First International, Ltd. (Swiss),
        and Jennifer Taylor

        835 West Fourth Street
        Williamsport, PA 17701
        (570) 326-5131
        (570) 601-0768 (fax)
        bbluth@mcclaw.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing document was served on July 14, 2025, via the Court's ECF system and by email to:

Susan Ayers, Esq.
Hill & Associates, P.C.
1700 Market Street, Suite 1350
Philadelphia, PA 19103
sue@hilljustice.com

Edwin A. Schwartz, Esq.
McNees Wallace & Nurick, LLC
100 Pine Street, P.O. Box 1166
Harrisburg, PA 17108
eschwartz@mcneeslaw.com

    /s/ Kara Thorvaldsen

33