## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **L.F.** | : | **CIVIL ACTION LAW** |
| **Plaintiff** | : | |
| **vs.** | : | **NO. 4:23-cv-01038-MWB** |
| **EF Educational Tours,** | : | **(Hon. Karoline Mehalchick)** |
| **EF Education First International** | : | |
| **Ltd.,** | : | **JURY TRIAL** |
| **EF Institute for Cultural Exchange,** | : | **DEMANDED** |
| **Inc.,** | : | |
| **EF Education First International,** | : | |
| **Ltd., Switzerland,** | : | |
| **Diego Manuel Taylor,** | : | |
| **Jennifer Taylor** | : | |
| **Defendants** | : | |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF RESPONSE IN OPPOSITION TO THE MOTION FOR SUMMARY JUDGMENT OF DEFENDANT DIEGO TAYLOR

### I.   INTRODUCTION

The parties to this Motion dispute the circumstances of their sexual encounter on this EF Educational Tour. Defendant Deigo Taylor says it was consensual; Plaintiff says it was not. She says she was forced to have sex against her will despite saying no multiple times, asking to go back to her room, and trying to go back to her room. There exist genuine issues of material fact precluding summary judgment for Plaintiff's assault and intentional infliction of emotional distress claim against Defendant Taylor. Contrary to the assertion of Moving Defendant, there was no "finding" by a Spanish tribunal precluding this matter.

II.    **COUNTERSTATEMENT OF FACTS**[1]

Prior to this trip, Plaintiff was a virgin, which Defendant Diego Taylor knew and believed.  RSOF, ¶ 19.  On the other hand, Defendant Diego Taylor had 8 sexual partners prior to this trip beginning at the age of fifteen.  RSOF, ¶ 19. Prior to this trip, Defendant Deigo Taylor had sex in his home, while his parents were home, in his own bedroom, in the bathroom, and in his parent's car.  RSOF, ¶ 19.

On the night of the assault, Plaintiff met Defendant Taylor in the hallway so that she could tell him to stop bothering her.  He was in his underwear, took her hands, and pulled her into his room.  RSOF, ¶¶ 43-44. Plaintiff was scared of getting into trouble for being in Defendant Deigo Taylor's room, a place she did not want to be, and a place she did not intent to be.  RSOF, ¶¶ 43-44. After she was pulled into his room, she was pushed against the wall and was trying to leave and could not.  RSOF, ¶¶ 43-44. Plaintiff could not leave once in the room because she was held against the wall. RSOF, ¶¶ 43-44. Once pulled to the bed she was held down on the bed and pulled back into the bed when she tried to get up.  RSOF, ¶¶ 43-44, 47.

Defendant Taylor held Plaintiff's wrists down by her side hard enough to cause pain and tried to kiss her and she said no and turned her head.  RSOF, ¶ 51.

---

[1] Citations to RSOF refer to the Plaintiff's Response to the Statement of Facts.

However, she was being held in place so she engaged hoping it would end sooner. RSOF, ¶ 51.

Plaintiff did not voluntarily "stay" in Defendant Deigo Taylor's room. Plaintiff could not leave once in the room because she was held against the wall. RSOF, ¶ 52. Once pulled to the bed she was held down on the bed and pulled back into the bed when she tried to get up.  RSOF, ¶ 52. Furthermore, to the extent that this averment implies consent by Plaintiff it is denied.  Plaintiff said no, at the beginning middle and end of the encounter; the sexual intercourse she endured was against her will.  RSOF, ¶ 52. She cried during the event and yet it continued. RSOF, ¶ 52. As explained by Expert Jeglic, Plaintiff's behavior is not inconsistent with sexual assault victims. RSOF, ¶ 52.

Plaintiff said no, at the beginning middle and end of the encounter; the sexual intercourse she endured was against her will.  RSOF, ¶ 54. She cried during the event and yet it continued.  RSOF, ¶ 54.  After Plaintiff reported the assault, she was taken to the hospital where she was interviewed, examined, received medical treatment, and then was taken to the police station where she was again interviewed. RSOF, ¶ 57.  Furthermore, Plaintiff had bruising as a result of the assault.  RSOF, ¶ 57.

Following the investigation into the sexual assault, Plaintiff and Defendant Taylor returned to the United States.  RSOF, ¶¶ 69, 71.

## I.    COUNTERSTATEMENT OF ISSUES INVOLVED

a. Whether there are genuine issues of material fact precluding the entry of summary judgment in favor of Defendant Deigo Taylor for Count VI, Assault

b. Whether there are genuine issues of material fact precluding the entry of summary judgment in favor of Defendant Deigo Taylor for Count VII, Intentional Infliction of Emotional Distress

## II.    ARGUMENT

### a. Standard of Review

Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. A genuine issue of material fact exists if the evidence is such that a reasonable jury could find for the non-moving party. It is the burden of the moving party to demonstrate that the evidence is such that no reasonable jury could return a verdict for the non-moving party. *Universal Underwriters Ins. Co. v. Swenson*, 2024 U.S. Dist. LEXIS 70627, 4 (M.D. Pa. 2024). A fact is material only if it might affect the outcome of the suit under the applicable law. Id.

When considering the evidence presented by the parties, the record is reviewed in the light most favorable to the non-moving party. *Goodman v. City of Philadelphia*, 2025 U.S. App. LEXIS 21729, 5-6 (3d Cir. 2025). Inconsistencies in testimony and evidence are useful in making credibility determinations but are not proper considerations for summary judgment. *Chatman v. City of Johnston*, 131

4

Fed. Appx. 18, 20, 2005 U.S. App. LEXIS 8675, 5 (3d Cir. 2005). Credibility determinations, weighing evidence, drawing inferences from facts and evidence, are jury functions, not those of the Court in ruling on Motions for Summary Judgment. Id.

### b. **Choice of Law**

A federal court sitting in diversity applies the substantive law of the applicable jurisdiction. *Lomax v. Nationwide Mut. Ins. Co.*, 964 F.2d 1343, 1345 (3d Cir. 1992) (citing *Erie v. Railroad Co. v. Tompkins*, 304 U.S. 64(1938)). To decide what jurisdiction's law applies, this Court is to apply Pennsylvania's choice-of-law rules because this Court sits in Pennsylvania. *Day & Zimmerman, Inc. v. Challoner*, 423 U.S. 3, 4 (1975) (discussing *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487 (1941)). For choice-of-law questions concerning tort actions, the Pennsylvania Supreme Court has adopted Sections 145 and 146 of the Restatement (2d) of Conflicts. *See Marks v. Redner's Warehouse Markets.*, 136 A.3d 984, 987 (Pa. Super. 2016) (citing *Griffith v. United Air Lines, Inc.*, 203 A.2d 796, 801–06 (Pa. 1964)). The factors relevant are:

(a) the place of the injury;

(b) the place of the conduct causing the injury;

(c) the domicile, residence, nationality, place of incorporation and place of business of the parties; and

(d) the place where the relationship between the parties is centered.

*Id.* at 988.

The incident occurred in Spain.  Plaintiff is from California.  Defendant Diego Taylor is from Pennsylvania.  Certainly, the United States has a greater interest in the conflict between the parties than Spain.  Given the remaining factors, and that this matter is pending in the Middle District of Pennsylvania, Plaintiff concedes that Pennsylvania law applies to the tort claims against Defendant Diego Taylor.  This is true despite the fact that Massachusetts law applies tot h claims against the EF Defendants and Defendant Jennifer Taylor, an agent in the control of the EF Defendants. The law of different states can ap[ply to different issues in the same case.  *Davis v, GEICO Gen, Ins. Co.*, 957 F. Supp. 2d 544, 551 (M.D. Pa. 2013).

### c. Assault

To state a claim for civil assault, Plaintiff must establish that the Defendant committed an act intended to put the Plaintiff in reasonable apprehension of an immediate or harmful contact and that Defendant succeeded in causing an apprehension of such contact.  Assault requires affirmative action, not just words. *Brown v. Am. Airlines, Inc.*, 723 F. Supp. 3d 411, 422 (E.D. Pa. 2024). Consent is a defense available in an assault case, generally.  *Quinn v. Ltd. Exp., Inc.*, 715 F. Supp. 127 (W.D. Pa. 1989).

In this action, there is sufficient evidence upon which a reasonable jury could find that Defendant Taylor assaulted Plaintiff.  The resolution of the disputed issues between these parties requires a determination of the credibility of the witnesses, both factual and expert, which is within the sole province of the jury. *Chatman v. City of Johnston*, 131 Fed. Appx. 18, 20, 2005 U.S. App. LEXIS 8675, 5 (3d Cir. 2005).  Specifically, the jury could find Plaintiff credible and believe that Defendant Taylor pulled her into his room, pinned her against the wall, ignored her when she said "no", refused to allow her to return to her room, refused to allow her off the of the bed, and had sexual intercourse with her multiple times despite her saying she did not want to, despite her saying "no", multiple times, despite her crying, despite her trying to leave, despite her saying she did not want to do this.  The jury may find this young woman, who was a virgin, who Defendant Taylor knew and believed was a virgin, was assaulted.

The jury could also find Plaintiff's sexual assault expert credible that the conduct of Plaintiff during and after the assault is not inconsistent with someone who has been sexually assaulted.  These questions must go to the fact finder.  The jury may believe Plaintiff who reported the sexual assault to her friends, group leader, hospital, police, parents, and therapists.

The jury may believe this young woman who has been brave enough to come forward in the hope that other minors on these "educational" tours are not subjected to the same abuse.

As an aside, the constant reference by all Moving Defendants, in this Motion and in the EF Defendants' Motion, to the conduct of these teenagers before the assault, i.e. they were flirting, they were texting, they were sending pictures, is insulting. The suggestion that this flirtatious activity somehow entitled Defendant Deigo Taylor to have sexual intercourse with Plaintiff even though she said no is offensive. There is no law that supports this theory should these Moving Defendants actually pursue such a theory at Trial.

### d.  Intentional Infliction of Emotional Distress

To support a claim for intentional infliction of emotional distress in Pennsylvania, Plaintiff must establish that 1) the Defendant engaged in conduct that was extreme and outrageous; 2) the conduct was intentional and reckless; 3) the conduct caused emotional distress; and 4) the distress was severe. The conduct must go beyond the bounds of decency and intolerable.  *Brown v. Am. Airlines, Inc.*, 723 F. Supp.3d 411, 423 (E.D. Pa. 2024).

Defendant Taylor concedes there was sexual intercourse with Plaintiff.  The issue presented for the jury's determination is whether it was consensual.  If it was not, then there is no question that forced sexual intercourse is extreme and

outrageous. Plaintiff suffered physical harm and emotional harm as a result of this assault. Physically, she had her virginity taken from her and suffered bruising as a result of the assault. RSOF, ¶¶54, 57. Plaintiff underwent psychological treatment to help her manage her distress after this incident, which included discomfort with people touching her, sexual activity, lack of enjoyment in daily life, all which lasted for about two years. RSOF, ¶ 68. Plaintiff's medical records documenting her treatment have been exchanged in discovery. Notably, however, Plaintiff's expert report deadline has not yet passed.

The resolution of the disputed issues between these parties requires a determination of the credibility of the witnesses, both factual and expert, which is within the sole province of the jury. *Chatman v. City of Johnston*, 131 Fed. Appx. 18, 20, 2005 U.S. App. LEXIS 8675, 5 (3d Cir. 2005). Specifically, the jury could find Plaintiff credible and believe that Defendant Taylor pulled her into his room, pinned her against the wall, ignored her when she said "no", refused to allow her to return to her room, refused to allow her off the of the bed, and had sexual intercourse with her multiple times despite her saying she did not want to, despite her saying "no", multiple times, despite her crying, despite her trying to leave, and despite her saying she did not want to do this. This conduct, if the jury finds Plaintiff credible, is outrageous and well beyond the bounds of decency.

9

## III.   <u>CONCLUSION</u>

For the foregoing reasons, and those set forth in the Response to the Statement of Material Facts, incorporated herein by reference, Plaintiff respectfully requests that this Honorable Court deny the Moving Defendants' Moton for Summary Judgment.

**HILL & ASSOCIATES, P.C.**

By:   ***/s/Susan B. Ayres***
     **SUSAN B. AYRES, ESQ.**
     **PA Identification No. 87562**
     **1700 Market Street, Ste. 3150**
     **Philadelphia, PA  19103**
     **(215) 567-7600**
     Sue@Hilljustice.com

     Attorney for Plaintiff

Date: September 17, 2025

## <u>CERTIFICATION OF WORD COUNT</u>

In accordance with Local Rule 7.8(b)(2) and the Court's Order dated June 2, 2025 permitting the parties to file briefs in support of and/or in opposition to Motions for Summary Judgment not exceed 7,500 words or thirty (30) pages, I, Susan B. Ayres, hereby certify that the herein brief, excluding the caption and signature block is 2,047words.

**HILL & ASSOCIATES, P.C.**

*/s/Susan B. Ayres*

**SUSAN B. AYRES, ESQUIRE**
**1700 MARKET STREET, SUITE 3150**
**PHILADELPHIA, PA 19103**
**PHONE: 215-567-7600**
**FACSIMILE: 215-525-4311**
**SUE@HILLJUSTICE.COM**
**ATTORNEY FOR PLAINTIFF, L.F.**

Date: September 17, 2025

1