UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| L.F., | |
| Plaintiff | CIVIL ACTION NO. 4:23-CV-1038 |
| v. | (MEHALCHICK, J.) |
| EF EDUCATIONAL TOURS, et al., | |
| Defendant | |

**MEMORANDUM**

This case was brought by Trenton Fallgatter and Morgan Ash on behalf of their minor daughter, L.F. ("Plaintiff"). (Doc. 1). Plaintiff asserts negligence, fraudulent misrepresentation, and breach of contract claims against Defendants EF Educational Tours, EF Education First International Ltd, EF Institute for Cultural Exchange, Inc. (collectively, "EF Defendants"), Jennifer Taylor, and John Does I-V, as well as an assault claim against Diego Manuel Taylor ("D. Taylor" together with EF Defendants "Defendants"). (Doc. 1). Presently before the Court is Defendants' motion for sanctions and to compel productions of documents, describing numerous discovery disputes between the parties. (Doc. 62). For the following reasons, the motion to compel will be GRANTED in part, with the remainder of it to be addressed at a later time, along with the motion for sanctions. (Doc. 62).

**I.   BACKGROUND**

The following factual background comes from Plaintiff's complaint. (Doc. 1). When she was sixteen, Plaintiff attended a trip to Spain with seventeen other Californian high school students. (Doc. 1, ¶¶ 17, 22). The trip was organized by EF Defendants. (Doc. 1, ¶¶ 17, 22). Upon their arrival, Plaintiff's California high school group was consolidated with a group of highschoolers from Pennsylvania. (Doc. 1, ¶ 24). Defendant D. Taylor was among the

Pennsylvania highschoolers. (Doc. 1, ¶¶ 24, 25). At the accommodations organized by EF Defendants, Plaintiff and D. Taylor were assigned to rooms next door to each other. (Doc. 1, ¶¶ 26, 27). According to Plaintiff, "[a]lmost immediately when the groups were consolidated by the EF Defendants, [D. Taylor] began aggressively pursuing [Plaintiff] in the manner of initiating unwelcome advances, following her, and making unwelcome comments about her appearance and presentation, which advances [Plaintiff] repeatedly and verbally refused." (Doc. 1, ¶ 34). Plaintiff further alleges that:

> Despite these open an [sic] aggressive behaviors displayed by [D. Taylor] which the EF Defendants knew or should have know [sic] about vis a vis the assigned group leaders, tour guides, tour directors, or other personnel assigned to monitor the minor travelers, the EF Defendants did nothing to intervene, monitor, or supervise this conduct, and did not take precautions to insure [sic] these minor travelers were not assigned to abutting hotel rooms.

(Doc. 1, ¶ 35).

Plaintiff further alleges that during the trip, after dragging her into his room from the hallway outside their adjacent hotel rooms, D. Taylor sexually assaulted Plaintiff. (Doc. 1, ¶¶ 38-42). Afterward, Plaintiff immediately reported the sexual assault to EF Defendants. (Doc. 1, ¶ 43). D. Taylor was arrested shortly after and charged with assault. (Doc. 1, ¶ 43).

The complaint alleges the following Counts: Count I—Negligence against EF Defendants; Count II—Negligent Infliction of Emotional Distress against EF Defendants; Count III—Negligent Misrepresentation against EF Defendants; Count IV—Fraudulent Misrepresentation against EF Defendants; Count V—Breach of Contract; Count VI—Assault against Diego Manuel Taylor; Count VII—Intentional Infliction of Emotional Distress against Diego Manuel Taylor; and Count VIII—Negligence against Jennifer Taylor and John Doe Defendants I-V. (Doc. 1). As relief, Plaintiff seeks damages. (Doc. 1, at 22).

Relevant to the instant motion is the following history of discovery in this case as relayed by the parties and supported by exhibits. On September 28, 2023, the EF Defendants served their first Requests for Production of Documents. (Doc. 63, at 4). Therein, EF Defendants requested Plaintiffs' communications and social media posts, drafts, direct messages, saved stories, and saved pictures. (Doc. 63, at 5). In her objections and responses, Plaintiff provided she had no responsive documents in her possession "at this time." (Doc. 63, at 5). On January 12, 2024, EF Defendants sent Plaintiff a request for a meet and confer and questioned Plaintiff's response, citing the fact that Plaintiff is a teenager, and it is common for teenagers to communicate by text and other messaging applications. (Doc. 63, at 5). EF Defendants thus specifically requested that type of electronically stored information ("ESI") to be produced. (Doc. 63, at 5). On February 14, 2024, Plaintiff's counsel "expressed uncertainty to the feasibility of retrieving certain types of ESI and asked EF Defendants' counsel to identify qualified eDiscovery vendors." (Doc. 63, at 5-6). EF Defendants report that they "promptly did so." (Doc. 63, at 6).

On April 12, 2024, the Court held a discovery conference, during which Plaintiff's counsel agreed to engage with a vendor to assist in collection of Plaintiff's social media accounts. (Doc. 63, at 6). Plaintiff's counsel agreed to advise EF Defendants whether she would be able to produce responsive information by May 12, 2024. (Doc. 63, at 6). On May 21, 2024, Plaintiff's counsel sent EF Defendants a 70-page document containing photographs and redacted photography. (Doc. 63, at 7). EF Defendants report that the production did not include the requested social media materials. (Doc. 63, at 7). EF Defendants requested the name of the vendor used to collect the information sent by Plaintiff's counsel, as EF Defendants suggest the production "did not conform to any of the requests made by EF

Defendants or to the promises" that Plaintiff's counsel made to the Court. (Doc. 63 at 7). Plaintiff's counsel responded that she would not provide the information regarding the vendor, nor was she willing to provide the ESI in the requested formats (Native, OCR, DAT, OPT, and TXT), as Plaintiff's counsel considered these requests "excessive." (Doc. 63, at 7; Doc. 63-10).

To address this issue, the parties held a telephonic discovery conference on July 9, 2024. (Doc. 63, at 7). While Plaintiff's counsel represented that she had produced all the relevant social media materials, emails, and text messages, the Court ordered her to provide the search terms used by her vendors by July 19, 2024. Three days after this deadline, on July 22, 2024, Plaintiff's counsel provided the Defendants with the search terms and parameters in a letter. (Doc. 63, at 8). According to Defendants, Plaintiff's counsel also reported that "verification to access Facebook and Tiktok were tied to [Plaintiff]'s old phone and phone number, which was stolen last year, the consultant was unable to extract any data from those accounts." (Doc. 63, at 8).

This issue came up again after Plaintiff's January 9, 2025, deposition when she testified that she and Defendant Taylor exchanged text messages during the trip. (Doc. 63, at 9). Plaintiff also testified that she does have access to her social media accounts on a new phone. (Doc. 63, at 9). When asked if she still had her social media posts from June 2022, Plaintiff responded, "In the archive, yes. In the database I mean, I do." (Doc. 63, at 9; Doc. 63-14, at 3-4). Plaintiff also testified that she gave these materials to her lawyer. (Doc. 63, at 9).

## II.     LEGAL STANDARDS

### A.     MOTION TO COMPEL

Rulings regarding the proper scope of discovery are matters consigned to the Court's

4

discretion and judgment. A court's decisions regarding the conduct of discovery will be disturbed only upon a showing of abuse of that discretion. *Marroquin-Manriquez v. I.N.S.*, 699 F.2d 129, 134 (3d Cir. 1983). The exercise of this discretion is guided, however, by certain basic principles. At the outset, Rule 26(b) of the Federal Rules of Civil Procedure generally defines the scope of discovery permitted in a civil action, prescribes certain limits to that discovery, and provides as follows:

> Scope in General. Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1)

Rule 37 of the Federal Rules of Civil Procedure authorizes a party to move to compel a party to comply with discovery obligations and specifically provides that:

> On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action.

Fed. R. Civ. P. 37(a)(1).

A party moving to compel discovery bears the initial burden of proving the relevance of the requested information. *Morrison v. Phila. Housing Auth.*, 203 F.R.D. 195, 196 (E.D. Pa. 2001). "Once that initial burden is met, 'the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the broad scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is

5

of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.'" *Prime Energy & Chem., LLC v. Tucker Arensber P.C.*, No. 2:18-CV-0345, 2022 WL 1642394, at *4 (W.D. Pa. May 24, 2022) (quoting *In re Urethane Antitrust Litig.*, 261 F.R.D. 570, 573 (D. Kan. 2009)).

B. MOTION FOR SANCTIONS

"A district court has the inherent power to sanction parties appearing before it for refusing to comply with its orders and to control litigation before the court." *Glime v. Susquehanna Valley Pre-Owned Sales & Serv.*, No. 4:21-CV-01499, 2022 WL 19005562, at *1 (M.D. Pa. Dec. 22, 2022). Because of this, "[t]he decision to impose sanctions for discovery violations and any determination as to what sanctions are appropriate are matters generally entrusted to the discretion of the district court." *Deville v. Givaudan Fragrances Corp.*, 419 F. App'x 201, 205 (3d Cir. 2011) (quoting *Bowers v. Nat'l Collegiate Athletics Ass'n,* 475 F.3d 524, 538 (3d Cir.2007)). While much discretion is given to the judiciary when imposing sanctions, the Court "must make factual findings that are sufficient to support its conclusions of law." *Naviant Mktg. Sols., Inc. v. Larry Tucker, Inc.*, 339 F.3d 180, 185 (3d Cir. 2003). Rule 26 of the Federal Rules of Civil Procedure provides the general rules governing discovery, while Rule 37 includes sanctions available for failure to comply with discovery requests.

"Dismissal [as a sanction] under Fed. R. Civ. P. 37 is [also] a matter for the discretion of the district court." *Curtis T. Bedwell & Sons, Inc., v. Int'l Fidelity Ins. Co.*, 843 F.2d 683, 691 (3d Cir.1988) (citing *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 642 (1976) (per curium)). The sanction of dismissal, however, "is disfavored absent the most egregious circumstances." *U.S. v. $8,221,877.16 in U.S. Currency*, 330 F.3d 141, 161 (3d Cir.2003) (citing *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 867–68 (3d Cir.1984). Where the proposed

sanctions include dismissal, entry of default judgment, or the preclusion of claims or defenses, the exercise of that discretion is governed by six factors originally enumerated by the Third Circuit Court of Appeals in *Poulis v. State Farm Fire & Casualty Co*. 747 F.2d 863; *Knoll v. City of Allentown*, 707 F.3d 406, 409–10 (3d Cir.2013).

Parties are required to respond to requests for initial disclosure within 14 days of a Rule 26(f) conference unless otherwise stipulated in a court order. Fed. R. Civ. P. 26. Parties also must respond to interrogatories and requests for production of documents within 30 days. Fed. R. Civ. P. (33)(b)(2); Fed. R. Civ. P. 34(b)(2)(A). If discovery attempts render themselves fruitless, a party may request discovery sanctions pursuant to the Federal Rules. Federal Rule of Civil Procedure 37(c)(1), permits sanctions as follows:

> (1) If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
>
>> (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
>>
>> (B) may inform the jury of the party's failure; and
>>
>> (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).
>
> *Billman v. Easton Area Sch. Dist*., 620 F. Supp. 3d 215, 220 (E.D. Pa. 2022) (quoting Fed. R. Civ. P 37(c)(1)).

Rule 37(d) similarly permits sanctions when "if a party fails, after being served with proper notice, to appear for that person's deposition." *Beale v. Wetzel*, No. CV 13-15ERIE, 2016 WL 11478174, at *1 (W.D. Pa. Oct. 18, 2016) (citing Fed. R. Civ. P. 37(d)(A)(i)), *report and recommendation adopted*, No. CV 13-15 ERIE, 2016 WL 6573854 (W.D. Pa. Nov. 7, 2016).

Rule 37(c) and 37(d) both allow for any type of sanction listed in Rule 37(b)(2)(A)(i)-

(vi), which includes "dismissing the action or proceeding in whole or in part." *Kim v. Columbia Cnty. Child. & Youth Servs.*, No. 4:15-CV-02331, 2016 WL 8257721 (M.D. Pa. Dec. 19, 2016) (quoting Fed. R. Civ. P. 37(b)(2)(A)(i)–(vi)), *report and recommendation adopted sub nom. Kim v. Columbia Cnty. Child. & Youth Serv.*, No. 4:15-CV-2331, 2017 WL 621231 (M.D. Pa. Feb. 15, 2017). The Third Circuit has also noted that district courts may "impose on an attorney those expenses, including attorneys' fees, caused by an unjustified failure to comply with discovery orders or pretrial orders." *Briscoe v. Klaus*, 538 F.3d 252, 262 (3d Cir. 2008).

Rule 37(e) governs "the applicability of sanctions for spoliation of electronically stored information" and "applies when "[1] electronically stored information that [2] should have been preserved in the anticipation or conduct of litigation [3] is lost [4] because a party failed to take reasonable steps to preserve it, and [5] it cannot be restored or replaced through additional discovery." *Davis v. Healthcare Servs. Grp., Inc.*, No. 2:16-CV-2401, 2017 WL 11723674, at *2 (E.D. Pa. Sept. 5, 2017) (quoting Fed. R. Civ. P. 37(e)), opinion clarified, No. CV 16-2401, 2018 WL 11484946 (E.D. Pa. Nov. 30, 2018). Courts may only order "measures no greater than necessary to cure the prejudice." *Davis*, 2017 WL 11723674, at *2 (quoting Fed. R. Civ. P. 37(e)).

**III.  DISCUSSION**

    A.  MOTION TO COMPEL

EF Defendants move to compel the "production of all responsive text messages and/or an authorization and release to obtain such ESI from Plaintiff's cell phone providers." (Doc. 62, at 4). EF Defendants state that Plaintiff's counsel has not produced any text messages between Plaintiff and her parents, Plaintiff and Taylor, Plaintiff and any friend, or Plaintiff and any other third party. (Doc. 68, at 8). At the evidentiary hearing, EF Defendants argued

8

that these text messages serve as contemporaneous communications. In other words, according to EF Defendants, any text message that Plaintiff sent or received during the proximate time of the alleged assault fall squarely within the scope of discoverable information under Rule 26(b)(1), as they may contain relevant, nonprivileged evidence related to the claims or defenses in this case. To further their argument, EF Defendants introduced depositions of Plaintiff and Plaintiff's mother, in which both women state that they communicated with each other via text message during Plaintiff's trip. In response, Plaintiff's counsel asserts that Plaintiff has produced all text messages relevant to this litigation. (Doc. 66, at 15). At the hearing, she specified that Plaintiff and Taylor did not communicate over text message during the trip. However, this assertion contradicts Plaintiff's deposition, in which she responded to the following line of questioning:

> Q: And how many text messages had gone back and forth?
>
> A: I can't remember, but it was – it was a decent amount. I mean we didn't text a whole bunch, but a few texts had been sent.
>
>  (Doc. 68-2, at 4).

In their motion, EF Defendants also ask this Court to compel "production of all responsive social media and/or an authorization and release to obtain such ESI from the social media providers." (Doc. 62, at 4). At the evidentiary hearing, both parties agreed that most of the communications between Plaintiff and Taylor occurred via Snapchat. However, according to EF Defendants, Plaintiff's counsel has refused to produce the messages from this platform. EF Defendants also provided that that Plaintiff changed her Instagram account on two separate occasions following the alleged sexual assault, and that, the forensic examination extracted data only from one of Plaintiff's Instagram accounts. From the EF Defendants' viewpoint, this falls short of the discovery requests and creates a "well-founded

9

skepticism that a teenage girl would refrain from posting on social media." (Doc. 63, at 2). At the evidentiary hearing, Plaintiff's counsel explained that she did not request this production because providing the requested authorization and release to all of Plaintiff's social media accounts would be an invasion of Plaintiff's privacy.

Rule 37(a) of the Federal Rules of Civil Procedure allows a party to compel discovery and will bear the burden of showing that the requested information is relevant. Fed. R. Civ. P. 37(a). Federal Rule of Civil Procedure of 26, permits discovery of materials "relevant to [a] claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). When evaluating the relevance and proportionality of discovery, courts consider "the importance of the issues at stake," "the parties' relative access to [the] information," "the parties' resources," the significance of the discovery to the case, and whether the burden of the discovery "outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1); *see Rice v. City of Philadelphia*, No. 24-CV-4882, 2025 WL 1426078, at *1 (E.D. Pa. May 16, 2025). In particular, relevancy is "construed broadly to encompass any matters that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)). However, even in light of the liberal discovery rules favored by this Court, discovery should not serve as a fishing expedition. *Upshaw v. Janssen Research & Development, LLC*, No. 11-7574, 2014 WL 1244047, at *3 (E.D. Pa. March 26, 2014).

   1. **Text Messages**

Turning first to EF Defendants' request for Plaintiff's text messages, the Court finds it too invasive to compel the production of "all responsive text messages" from Plaintiff's previous phone number. (Doc. 62, at 4). *See Lawson v. Love's Travel Stops & Country Stores, Inc.*, Civ No. 1:17-CV-1266, 2020 WL 109654, at *1 (M.D. Pa. Jan. 9, 2020) ("We agree no party

would be entitled to all text messages contained on an opposing party's cellphones."). While "the question of relevancy is to be more loosely construed at the discovery stage," Rule 26(b)(1) of the Federal Rules of Civil Procedure limits the scope of discovery matters "that bear[] on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Nestle Foods Corp. v. Aetna Cas. & Sur. Co.*, 135 F.R.D. 101, 104 (D.N.J. Nov. 13, 1990). At the evidentiary hearing, EF Defendants suggested the abnormality for Plaintiff's lack of text messages regarding "a trip of a lifetime." The Court agrees that the circumstances in this case, specifically the opportunity to travel abroad with classmates and the alleged sexual assault, would usually entail an adolescent communicating with her peers and family.

Text messages sent between Plaintiff and her parents, Taylor, or any other third party during the proximate time of her trip are directly relevant to her claims. Thus, the Court will compel production limited to texts between: (1) Plaintiff and her parents; and (2) Plaintiff and any person who participated, in any capacity or role, in EF Defendants' tour. within seven days before the scheduled start date and seven days after the scheduled end date, between June 18, 2022, to July 11, 2022. Accordingly, EF Defendants' motion to compel is **GRANTED** and Plaintiff shall provide Defendants with all messages between Plaintiff and her parents, Taylor, and any other third party between June 18, 2022 and July 11, 2022. If Plaintiff no longer has access to these messages, Plaintiff is directed to provide EF Defendants with an executed authorization for them to obtain the messages from Plaintiff's cell phone providers.

2. **Messages from Social Media providers**

11

Although courts have "declined to permit far-roving discovery into social media accounts where the inquest does not meet the basic tenants of Rule 26," courts have also permitted discovery of social media records when "it [was] reasonably calculated to lead to the discovery of admissible evidence." *Ogden v. All-State Career Sch.*, 299 F.R.D. 446, 448 (W.D. Pa. Apr. 23, 2014) (directing a plaintiff to produce all communications he made on any social networking website during alleged workplace harassment but limiting discovery to discussions relating to workplace environment and his emotional state of mind resulting from the misconduct). Courts have generally found that requests for social media information that supports, mentions, or contradicts the plaintiff's allegations in the complaint to be relevant. *See Bryant v. Wilkes-Barre Hosp. Co.*, 2016 WL 3615264, at *3-4 (M.D. Pa. July 6, 2016) (finding evidence of the plaintiff's participation in a Facebook group relevant because it raised an issue as to whether the alleged conduct by the plaintiff's coworkers was unwelcome, uninvited, and subjectively offensive); *see also Zampitella v. Virtua-W. Jersey Health Sys., Inc.*, No. CV 23-3824, 2024 WL 3102260, at *3 (D.N.J. June 24, 2024) (noting that production of any posts or comments plaintiff made regarding her daily activities on any social media platform during her FMLA leave could "lead to relevant information and are proportional to the needs of this case.").

At the evidentiary hearing, both parties agreed that most of the communications between Plaintiff and Taylor occurred via messages on Snapchat. Defendants averred that Plaintiff's counsel did not produce such information. Plaintiff's counsel also averred that Plaintiff rarely uses Facebook. Defendants also spoke to the fact that Plaintiff changed her Instagram account on two separate occasions following the alleged sexual assault, and consequently, the forensic examination extracted data only from one of Plaintiff's Instagram

accounts. The extraction time frame was limited to June 1, 2022, to June 30, 2023 (Doc. 66, at 24), but without a clear indication of when Plaintiff changed her Instagram account, the Court cannot ascertain whether the extraction accurately aligns with Plaintiff's activity in relation to EF Defendants' tour. Given the claims in this case, Plaintiff's emotions or mental state, or content that refers to events that may reasonably be expected to produce a significant emotion or mental state, falls within the scope of discovery in this case. Further, Plaintiff could have changed her Instagram account at any point, which could result in an inaccurate portrayal of emotions or mental state.

While the Court understands Plaintiff's argument that providing authorization and/or release to all social media accounts of Plaintiff seems like a basic invasion of an adolescent's privacy, given the argument and facts presented at the evidentiary hearing, the Court concludes that the information contained in these accounts is discoverable. Accordingly, EF Defendants' motion to compel the authorization and release of messages on Snapchat, Instagram, and TikTok from Plaintiff's accounts is **GRANTED**, and Plaintiff shall provide EF Defendants with executed authorizations for them to obtain the messages from Plaintiff's Snapchat, Instagram, and TikTok social media accounts.

   3. **Deposition**

EF Defendants move to compel "the Plaintiff to reappear for a continued deposition on the contents" of requested text messages and messages on social media accounts. (Doc. 62, at 4). Under "Federal Rule of Civil Procedure 30(a)(2), a party must obtain leave of court to depose a witness 'if the deponent has already been deposed in the case.'" *Jarzyna v. Home Properties, L.P.*, 783 F. App'x 223, 227 (3d Cir. 2019) (quoting Fed. R. Civ. P. 30(a)(2)(A)(ii)). The decision whether to "permit a party to conduct a second deposition of someone who has

already been deposed" turns on a consideration of "the factors set forth in Rule 26(b)(2)." *Newill v. Campbell Transp. Co.*, No. 2:12-CV-1344, 2013 WL 6002349, at *7 (W.D. Pa. Nov. 12, 2013). At this time, the Court will defer ordering a continued deposition until the remaining discovery is produced.

    B.  MOTION FOR SANCTIONS

Finally, EF Defendants move for sanctions against Plaintiff's counsel. (Doc. 62). The motion for sanctions will be deferred until the discovery issue is resolved, without prejudice to the Defendants amending the motion after remaining discovery is produced.

**IV.**  **CONCLUSION**

Based on the foregoing, EF Defendants' Motion to Compel is **GRANTED in part** and **DEFERRED in part**. (Doc. 62). EF Defendant's Motion to Compel for Plaintiff to reappear for another deposition is deferred until after this discovery issue finds a resolution. EF Defendants' Motion for Sanctions is deferred as well**.** (Doc. 62).

An appropriate Order follows.

Dated: September 29, 2025                                                         *s/ Karoline Mehalchick*
                                                                                    **KAROLINE MEHALCHICK**
                                                                                    **United States District Judge**